UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FLORENCIO AROCHO, JR.,

                     **Plaintiff,**

-vs-                                          **Case No.  6:07-cv-01886-Orl-19KRS**

CENTRAL STATES, SOUTHEAST AND
SOUTHWEST AREAS PENSION FUND,

                     **Defendant.**

_____

# ORDER

      This case comes before the Court on the following:

1.      Defendant's Motion for Summary Judgment (Doc. No. 23, filed May 4, 2007);

2.      Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 33, filed June 27, 2007);

3.      Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 34, filed July 2, 2007); and

4.      Plaintiff's Response in Opposition to Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 35, filed July 20, 2007);

## Background

      Florencio Arocho, Jr. is an employee of United States Parcel Service ("UPS") who challenges the decision of Central States, Southeast and Southwest Areas Pension Fund ("Central States") to deny additional credit toward his pension.  (Doc. No. 1, filed Dec. 12, 2006, ¶¶ 5-7).

## I.     Arocho's Employment History

Arocho began working part-time for UPS on January 7, 1980.  (Doc. No. 24, ¶ 63).  He had

enlisted in the U.S. Navy's "Delayed Entry Program" during the previous November.  (*Id.*)  As a

result of his commitment to the Navy, Arocho ceased employment with UPS in October 1980 and

began active service in the Navy.  (*Id.*)  Upon being discharged from the Navy in 1984, Arocho

resumed part-time employment with UPS.  (*Id.*)  On February 4, 1985, UPS hired Arocho as a full-

time employee.  (*Id.*)

Arocho's employment at UPS brought him under the coverage of two pension providers.

As a part-time employee, Arocho was under the coverage of the "UPS Pension Plan."  (*Id.* at ¶ 7).

When he became a full-time employee in 1985, Arocho came under the coverage of Central States,

a multi-employer Taft-Hartley Trust.  (*Id.*)  Both providers calculate an employee's pension payout

based how many years the employee was covered under that particular pension.  (*Id.*)

Through a reciprocal agreement with the UPS Pension Plan, Central States also offers a

"Partial Reciprocal Pension."  (*Id.*)  The "Partial Reciprocal Pension" allows UPS employees who

change from part-time to full-time employment to credit their time spent as a part-time employee

toward a "partial pension" with Central States.  (*Id.* at ¶ 52).  However, the partial pension is distinct

from Central States' full pension programs and pays at a lower rate. (*See* Doc. No. 24-4, p. 91).

## II.    The Central States Pension Fund

The Central States Pension Fund is a multi-employer pension program created by an

agreement between several labor unions and a group of freight companies.  (Doc. No. 24-3, filed

May 4, 2007, p. 2).  The Fund allows individuals to earn credit toward a pension while working for

any of the employers that participate in the program.  (Doc. No. 24, ¶¶ 25-31).  The Fund is

governed by a Board of Trustees ("the Trustees"), composed of equal numbers of employer and employee representatives.  (*Id.*)

The Central States Pension Fund plan document sets forth several important terms. Eligibility for Central States' various pensions is based on how many years of "Contributory Service" an individual has.  (Doc. No. 24-4, pp. 42-68)   "Contributory Service" is defined as "any employment with a Contributory Employer required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement."  (*Id.* at pp. 13-14).  Under the plan, an individual may also earn "Contributory Service" for years of service in the military if: (1) the military service began while the individual worked for an employer that was (or became during the military service) a contributory employer; and (2) the individual would have earned "Contributory Service" had his employment not been interrupted by service in the military.  (*Id.* at pp. 14-15).

An individual can become eligible for a partial pension if the individual does not have sufficient "Contributory Service" credit for a full pension[1] because his years of employment were divided between different pension plans.  (Doc. No. 24-4, p. 89; Doc. No. 24, ¶ 90).  Eligibility for the partial pension is based on the individual's "Combined Service" credit.  (Doc. No. 24-4, p. 89).  The individual's total "Combined Service" credit is calculated by adding the individual's service credit earned while under a "related" pension plan[2] to his service credit earned while under the Central States plan.  (*Id.*)

---

[1] Central States offers a number of pension programs to plan participants who have sufficient "Contributory Service" credit.  (Doc. No. 24-3, pp. 42-68).  Although the various plans pay at different rates, they are collectively referred to here as "full" pensions.

[2] "Related" pension plans are plans that  have entered into reciprocal agreements with Central States to offer partial pensions to employees who have moved from the related plan to Central States (or vice versa).  (Doc. No. 24-4, p. 89).  The UPS Pension Plan qualifies as a "related" pension plan.  (*See* Doc. No. 24, ¶ 7).

III.     **Arocho's Request for Additional Credit**

The events that led to this litigation began in May of 1997 when Arocho requested that Central States give him "Contributory Credit" toward his Central States pension for the years he worked part-time at UPS and served in the military. (Doc. No. 24, ¶ 64). In October 1997, Central States advised Arocho that it could not award him "Contributory Service" credit toward his Central States pension because UPS only made contributions to Central States for full-time employees. (*Id.* at ¶ 71). Since Arocho became a full-time employee in February 1985, he could not receive "Contributory Service" credit for any time before that. (*Id.*)

Arocho wrote back and asked Central States for "Combined Service" credit toward a partial pension. (*Id.* at ¶ 72). At that time, the UPS Pension Plan had refused to give Arocho credit toward its own plan because it would not award credit for any years an employee worked before turning twenty-five. (Doc. No. 24-8, filed May 8, 2007, p. 1). Arocho was seventeen when he began working at UPS and was twenty-two when he changed to full-time status. (Doc. No. 24, ¶ 63). However, Arocho advised Central States that the Department of Labor was "engaged in a case" with UPS to provide restitution to the UPS Pension Plan for the years he worked part-time and was in the military service. (Doc. No. 24, ¶ 74). Arocho argued that Central States was required to give him "Combined Service" credit based on the Uniform Service Employment and Reemployment Rights Act ("USERRA"), a federal law that requires pension plans to give service credit to employees during the period that their employment is interrupted by military service. (*Id.*) Central States denied his request. (*Id.*)

From July 2000 to December 2001, Arocho unsuccessfully worked his way through Central State's multi-level appeals process. (*Id.* at ¶¶ 76-85). Central States based its various denials on

similar reasoning. (*Id.*) Essentially, Central States reasoned that UPS was not required to make contributions to Central States until 1985 when Arocho became a full-time employee. (*Id.*) Accordingly, he was not entitled to "Contributory Service" credit for his time spent as a part-time employee or in military service. (*Id.*) In addition, the UPS Pension Plan did not consider Arocho to be a participant in its plan. (*Id.*) Thus, Arocho was also not eligible for any additional "Combined Service" credit toward a partial pension. (*Id.*)

In January of 2003 the UPS Pension Plan informed Arocho that it had adopted modifications that allowed Arocho credit toward the UPS Pension Plan based on his part-time employment and military service. (Doc. No. 24-8, p. 1). Specifically, the plan retroactively eliminated the requirement that an employee be at least twenty-five years old to earn service credit. (Doc. No. 24-15, filed May 5, 2007, p. 1). As result, the UPS Pension Plan awarded Arocho nine months of service credit for the 705 hours he worked in 1980. (Doc. No. 24-8, p.3). The UPS Pension Plan also awarded Arocho twelve months of credit for three of his years in the military, reasoning that he worked the equivalent of 2,280 hours each year in military service. (*Id.*)

Based on this development, Arocho wrote Central States in May 2004 to ask for a reconsideration of his appeal. (Doc. No. 24, ¶ 89). Because the UPS Pension Plan now allowed Arocho credit for the years between 1980 and 1984, he argued that Central States should award him "Contributory Service" credit under its reciprocal agreement with the UPS Pension Plan. (*Id.*)

Central States responded by agreeing to recognize Arocho's years of part-time employment and military service as "Combined Service" credit toward its partial plan. (Doc. No. 24, ¶ 91). However, it advised Arocho that he was not eligible to receive benefits under this plan until he reached a minimum of thirty-years of "Combined Service" credit. (*Id.*) In another letter, Central

States clarified that it would not award Arocho additional "Contributory Service" credit.  (*Id.* at ¶ 92).   It explained that "Contributory Service" credit could only be earned while working for an employer that was making contributions to the Central States Pension Plan.  (*Id.*)   The UPS Pension's modifications did not change the fact that UPS was not required to make contributions to the Central States pension on Arocho's behalf until February of 1985.  (*Id.*)

## IV.    Procedural History

Arocho filed this lawsuit on December 12, 2006, pursuant to 29 U.S.C. section 1132(a)(1)(B).  (Doc. No. 1, filed Dec. 12, 2006, ¶1).  Arocho alleged that Central States failed to provide the applicable "Contributory Service" credit to his pension for the period he was in the military, violating the reciprocal agreement between the UPS Pension and Central States.  (Doc. No. 1, ¶ 7).

On May 4, 2007, Central States filed a Motion for Summary Judgment.  (Doc. No. 23).  In its motion, Central States argues that Pension Plan Trustees' decision to deny Arocho additional "Contributory Service" credit was correct.  (Doc. No. 23, p. 2).  According to Central States, an individual may only receive "Contributory Service" credit for time while working for an employer that is making contributions to the Central States pension on the individual's behalf.  (*Id.*)  Since UPS did not begin to make contributions on Arocho's behalf until February 2, 1985, Arocho cannot receive "Contributory Service" credit for any time before that date.  (*Id.*)

Arocho challenges the Trustees' decision on several grounds.  First, Arocho argues that Central States is obligated under the reciprocal agreement to award him "Contributory Service"

credit for his part-time employment and military service.[3]  (Doc. No. 33, pp. 4-6).  Secondly, Arocho

argues that the UPS Pension Plan's decision to award him 2,280 hours of service credit per year for

his time in the military means that he was a "full-time" employee during that time and, therefore,

should have been covered under the Central States Pension Plan.  (*Id.* at p. 5).  Finally, Arocho

argues that USERRA requires Central States to calculate Arocho's "Contributory Service" credit

as if he never joined the military.  (*Id.* at pp. 5-6)  According to Arocho, the fact that he became a

full-time employee upon returning from military service means that he would have become a full-

time employee in 1981 had he never joined the military.  (*Id.*)  Therefore, Central States should

award Arocho "Contributory Service" credit as if he was covered under the plan during that time.

(*Id.*)

## Standard of Review

The Employment Retirement Income Security Act ("ERISA") provides a cause of action to

challenge a pension plan administrator's denial of benefits.  29 U.S.C. § 1132(a)(1)(B) (2006).  In

the Eleventh Circuit, the plan administrator's decision is analyzed under one of three standards of

review.  *Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1134 (11th Cir. 2004)); *Crume v.

Metro. Life Ins. Co.*, 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006); *Smorto v. 3DI Techs., Inc.*, 393

F. Supp. 2d 1304, 1313 (M.D. Fla. 2005)).  The Court adopts a "de novo" standard when the pension

plan does not grant discretion to the administrators to make claims decisions.  *Smorto*, 393 F. Supp.

2d at 1313.  When the plan administrators are vested with discretion, the court applies an "arbitrary

and capricious" standard.  *Id.*  Finally, the court applies a "heightened arbitrary and capricious"

---

[3] Arocho primarily sets forth this argument in his Complaint and his May 27, 2004 letter to
the Board of Trustees.  (Doc. No. 1, ¶¶ 7-9; Doc. No. 24-9, filed May 4, 2007).

standard when the plan administrators are vested with discretion but, for some reason, a conflict of interest exists.[4]  *Id.*

When the district court reviews a benefits-decision subject to deferential review, "in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Leahy v. Raytheon Co.*, 315 F.3d 11, 17-18 (1st Cir. 2002); *see also Crume,* 417 F. Supp. 2d. at 1272 (collecting cases from the Middle District of Florida that have adopted this standard).  In such cases, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." *Crume*, 417 F. Supp. 2d at 1272 (quoting *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999)).

## Analysis

In this case, Arocho concedes that no issues of fact are in dispute.  (Doc. No. 33, p. 6).  Furthermore, Arocho agrees with Central States that the Trustees were vested with discretion and no conflict of interest existed.  (*Id.*)  Thus, the Trustees' decision to deny Arocho additional "Contributory Service" credit must be upheld unless it was arbitrary and capricious.  *Smorto*, 393 F. Supp. 2d at 1314.

## I.    Central States's Obligations under the Reciprocal Agreement

Arocho first argues that the Trustees erred because Central States is obligated to provide him with "Contributory Service" credit under its reciprocal agreement with the UPS Pension Plan.  (Doc.

---

[4]  For example, a conflict of interest exists when a corporation that administers a pension plan for profit makes claims decisions.  *Crume*, 417 F. Supp. 2d at 1278.  In such cases, the corporation has a financial incentive to deny claims. *Id.*

No. 33, pp. 4-6).   In response, Central States argues that Arocho is misreading the reciprocal agreement and plan document.  (Doc. No. 23, pp. 21-22).  The reciprocal agreement requires Central States to award "Combined Service" credit to Arocho, not "Contributory Service" credit.  (*Id.*) "Contributory Service" can only be earned while working for an employer that is required to make contributions on the employee's behalf.  (*Id.*) According to Central States, the reciprocal agreement did nothing to change the fact that UPS was not obligated to make contributions on Arocho's behalf before he was hired as a full-time employee in 1985.  (*Id.*)

The Trustees' reasoning finds adequate support in the language of the reciprocal agreement and plan document.  The plan document defines "Contributory Service" as "any employment with a Contributory Employer *required to make Employer Contributions* on his behalf according to a Collective Bargaining Agreement."  (Doc. No. 24-4, p. 13-14 (emphasis provided)).  Under the plan, Arocho could also earn "Contributory Service" for years of military service if: (1) the military service began while he was employed by an employer that was (or became during the period of military service) a contributing employer; and (2) he would have earned "Contributory Service" had his employment not been interrupted by service in the military.  (*Id.*)  Thus, an employee can only earn "Contributory Service" credit for periods of time during which his employer was required to make employer contributions on his behalf.  (*Id.*); *see also Karr v. Central States, Southeast & Southwest Areas Pension Fund*, Case No. 98-4400, 2000 WL 659593, *5 (6th Cir. May 11, 2000) (plaintiff was not entitled to "Contributory Service" credit because he was a part-time employee for the period he claimed credit).

UPS was not required to make contributions on Arocho's behalf until February of 1985. (Doc. No. 24, ¶ 63).  As a result, Arocho's service before that time cannot be considered

"Contributory Service" under the plan document.  (*See* Doc. No. 24-3, pp. 13-14).  The reciprocal

agreement does not change this outcome.  (Doc. No. 24-15).  Rather, the reciprocal agreement

establishes a procedure to gain "Combined Service" credit toward a partial pension.  (*Id.* at pp. 11-

12)  The criteria for earning "Contributory Service" is governed solely by the plan document which

offers no basis to grant Arocho "Contributory Service" credit for any time before February 1985.

(*See* Doc. No. 24-4, pp. 13-14).

## II.    The UPS Pension's Award of Service Credit

The language of the plan document also contradicts Arocho's argument that Central States

should award Arocho "Contributory Service" credit based on the UPS Pension Plan's decision to

award him service credit for his years in the military.  In January 2003, the UPS Pension Plan gave

Arocho service credit for working 2,280 hours per year while in the military.  (Doc. No. 24-8, pp.

1-3).  Arocho contends that this award of service credit means that he was really a "full-time

employee" of UPS during his military service.  (Doc. No. 33, pp. 5-6).  Since Central States provides

pensions to full-time UPS employees, he argues that the Trustees erred by not awarding

"Contributory Service" credit to Arocho for his time in the military.  (*Id.*)

Central States responds that the UPS Pension Plan's decision to retroactively award service

credit does nothing to change the determination of UPS, Arocho's employer, that Arocho became

a full-time employee in February of 1985.  (Doc. No. 23, pp. 21-22).  Arocho cannot receive

"Contributory Service" credit for any time before February 1985 because he was not covered by the

Central States pension program until that time.  (*Id.*)

The Trustees did not act arbitrarily by rejecting Arocho's argument.  Arocho can only earn

"Contributory Service" credit for his service before February 1985 if UPS was required during that

time to make employer contributions to Central States on Arocho's behalf.  (Doc. No. 24-4, pp. 13-14).  The UPS Pension Plan's grant of service credit to Arocho does not retroactively impose a duty on UPS to make contributions to Central States.  Despite Arocho's urging, the  UPS Pension Plan's letter does not purport to create such a duty.  (*See* Doc. No. 24-8, p. 1).  To the contrary, the UPS Pension Plan's letter to Arocho states that "[o]n 3/1/85, you became a full-time union employee of a multi-employer pension plan covered under the International Brotherhood of Teamsters (I.B.T.) Central States, Southeast & Southwest Areas Pension Fund Conference." (*Id.*).  The letter recognizes that Arocho did not become a full-time UPS employee until 1985 and did not fall under the Central State Pension Plan until that time.  (*Id.*)

More fundamentally, it is unclear how the UPS Pension Plan could impose a duty on UPS to make contributions to Central States.  Arocho appears to mischaracterize the letter from the UPS Pension Plan as a letter from UPS, his employer.  (*See* Doc. No. 33, p. 5 ("The Defendant continues to pretend the Plaintiff was only a part-time employee despite recognition by UPS of his full-time employment . . . .")).  Aside from sharing an acronym, there is nothing in the record to suggest that the UPS Pension Plan has the power to affect how UPS classifies its employees.

## III.   Central States' Obligations under USERRA

Finally, Arocho argues that USERRA requires Central States to award him "Contributory Service" for the period he served in the military.  (Doc. No. 33, pp.  4-8).  Subsection (b)(3)(A) of 38 U.S.C. section 4318 provides that an employer's liability to pay into a pension fund on behalf of a re-employed service member shall be computed "at the rate the employee would have received but for the period of [military] service . . . ."  Arocho argues that the words "but for" used in the statute require Central States to calculate Arocho's "Contributory Service" as if he never had joined the

military.  (Doc. No. 33, pp. 5-6).  Since UPS hired Arocho as a full-time employee upon returning

from the military, Arocho reasons, UPS would have hired him as a full-time employee sometime in

1981 had he never joined the military.  (*Id.*)  Therefore, (1) Arocho would have fallen under the

Central States Pension Plan; (2) UPS would be required to make payments on his behalf; and (3) the

Trustees erred by failing to award "Contributory Service" to Arocho for his service in the military.

(*Id.*)

　　　　As a threshold matter, it is unclear whether section 4318 requires an employer to make

pension contributions on behalf of a service member who does not already meet the requirements

to be covered under that pension at the time he begins military service.[5]  However, even assuming

that section 4318 operates as Arocho contends, Arocho's reliance on USERRA still suffers from two

major flaws.

　　　　First, the statute contradicts Arocho's argument that the Trustees should have assumed that

Arocho would have become a full-time employee in 1981.  *See* 38 U.S.C. § 4318(b)(3)(B).

Subsection (b)(3)(A) provides that the employer's liability to a pension fund is calculated "at the rate

the employee would have received but for the period of [military] service. . . ."  38 U.S.C. §

4318(b)(3)(A).  According to subsection (b)(3)(B), when that rate is "not reasonably certain," the

employer's liability should be calculated "on the basis of the employee's average rate of

---

[5] Section 4318 makes numerous references to "the plan," rather than to a system of pension
plans or pension benefits generally.  38 U.S.C. § 4318(a)(2)(B), (b)(1), (b)(2).  Furthermore,
Arocho's construction of the statute imposes a much more onerous duty on employers.  If the statute
is construed as requiring employers to continue funding a pension program to which the employee
already belongs, the employer's duty is relatively clear and defined.  *See* 38 U.S.C. § 4318(b)(1).
On the other hand, if the employer is required to guess the plan for which the employee would
become eligible had he not joined the military, the employer risks funding the wrong plan.  *See id.*
This problem is especially relevant in this case where pension coverage depends on what career
track the employee takes.

compensation during the 12-moth period immediately preceding such period (or, if shorter, the period of employment immediately preceding such period)." 38 U.S.C. § 4318(b)(3)(B).  Here, the rate of compensation Arocho would have received "but for" his employment is not "reasonably certain."  *See id.*  Specifically, it is unclear whether Arocho would have remained a part-time employee or would have changed to full-time status.  Thus, the statute determines UPS's liability based on Arocho's period of employment immediately before he began military service.  38 U.S.C. § 4318(b)(3)(B).  There is no dispute that Arocho was a part-time employee before he served in the military.  (Doc. No. 33, p. 2).

Second, even if the Trustees were required to proceed under subsection (b)(3)(A) and determine Arocho's rate of compensation "but for" his military service, Arocho fails to present any evidence that he would have become a full-time employee in 1981.  Arocho argues that there is no need to "speculate" whether he would have become a full-time employee in 1981 because UPS made him a full-time employee upon returning from military service.  (Doc. No. 33, p. 5).  According to Arocho, this means that he would have become a full-time employee in 1981 had he not joined the military.  (*Id.*).

No federal court has analyzed the "but for" language of subsection (b)(3)(A).[6]  However, it is reasonable to assume that an employer's duty to make contributions to a pension fund on an employee's behalf must be supported by some evidence that the employee was, or at least should

---

[6] The Court's research revealed only two cases analyzing section 4318:  *Kelly v. W.G. Tomko, Inc.*, 2007 WL 906430, *3-4 (M.D. Pa. Mar. 22, 2007) (whether a company was an "employer" for purposes of ERISA and USERRA), and *Wriggelsworth v. Brumbaugh*, 129 F. Supp. 2d 1106, 1112 (W.D. Mich. 2001) (whether USERRA preempts state laws concerning pension eligibility).

have been, covered under that pension.[7]  Critically, Arocho did not present any evidence to the Trustees in support of his claim.[8]  Arocho only presented an inference drawn from events that occurred four years after he allegedly would have become a full-time employee.  Thus, the Trustees did not act arbitrarily by refusing to speculate whether Arocho would have become a full-time employee.

The Trustees' interpretation of the plan was not arbitrary and capricious.  Accordingly, the Trustees' decision to deny Arocho additional "Contributory Service" credit must be upheld.

### Conclusion

The Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 23).  The Court **DENIES as moot** Defendant's Motion for Leave to File a Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Doc. No. 34).  The Court **DENIES as moot** Plaintiff's

---

[7]  "[A]t the rate the employee would have received but for the period of [military] service . . . ." implies that a causal connection must exist between the employee's rate of compensation and the military service. *See* Black's Law Dictionary, CAUSE (8th ed. 2004) (defining "but-for" cause). In other words, the Court must be able to determine what the employee's rate of compensation would have been absent the military service. *See id.*  Such causation must naturally be proved by at least some evidence. *See, e.g., Altonen v. City of Minneapolis*, 487 F.3d 554, 560-62 (8th Cir. 2007) (discussing the burden of proof to prove causation in a first amendment retaliatory firing case).

[8]  For example, Arocho did not point to a company policy that would have automatically made him a full-time employee. *Compare Brooks v. Missouri Pac. R.R.* Co., 376 U.S. 182, 185 (employee was entitled to seniority after his military service because his position was subject to an automatic promotion schedule). Likewise, Arocho did not present any affidavits or testimony supporting his claim. *See, e.g.*, *Wallace v. Teledyne Continental Motors*, 138 Fed. Appx. 139, 143 (11th Cir. 2005)(employee unable to prove that she was qualified for a promotion through her own subjective testimony).

Motion for Summary Judgment (Doc. No. 44, filed Sept. 21, 2007) and all other pending motions.

This case is **DISMISSED**, and the Clerk of Court is directed to close the file.

   **DONE** and **ORDERED** in Chambers in Orlando, Florida on October 9, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record